

                40 Broad Street, 7th Floor
                New York, New York 10004
                Telephone: (212) 943-9080

**LaDonna Lusher, Esq.**
llusher@vandallp.com

January 30, 2024

**VIA ECF**
Magistrate Judge Vera M. Scanlon
United States Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Felix Marquez, individually and on behalf of all others similarly situated v. G.E.S. Bakery, Inc. d/b/a Strauss Bakery, et al.*
            Docket No. 22-cv-07955-ARR-VMS

Dear Judge Scanlon:

      Virginia & Ambinder, LLP ("V&A"), along with co-counsel Naydenskiy Law Group ("NLG"), represent Plaintiff in this wage and hour action. The parties jointly submit their settlement of this action for approval by the Court as required by Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). A copy of the Settlement Agreement ("Agreement") is annexed to the accompanying Declaration of LaDonna M. Lusher ("Lusher Decl.") as Exhibit A. The parties consent to proceed before Your Honor for all purposes, including for review of the settlement agreement and to conduct any hearings related to settlement approval. Plaintiff's counsel also seeks an award of reasonable attorneys' fees and costs as part of the Cheeks review process.

    **I.**    **PRELIMINARY STATEMENT**

      On December 29, 2022, Plaintiff commenced this action seeking to recover unpaid minimum wages, unpaid overtime wages, unpaid "spread of hours" wages, statutory damages, interest, reasonable attorneys' fees and costs, liquidated and other damages, and all other appropriate legal and equitable relief. Plaintiff brought these claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and New York Labor Law, § 1, et seq. ("NYLL"), for himself and on behalf of similarly situated individuals employed by defendants G.E.S Bakery, Inc., d/b/a Strauss Bakery, Srah Bakery, Inc., YSDM, Inc., Tzvi Goldstein, and Elliot Berman ("Defendants"). Defendants operate a large-scale baked goods manufacturing business located in Brooklyn, New York.

      Plaintiff alleges that he was employed by Defendants as a non-exempt hourly worker from approximately January 2022 until approximately March 2022. Plaintiff Marquez's duties included

1



organizing Defendants' products including in Defendants' freezer, and preparing and labelling boxes containing Defendants' bakery products.

Plaintiff Marquez alleges that he typically worked from approximately 8 a.m. to 8 p.m. or from 7 a.m. to 6:30 p.m., approximately five (5) to six (6) days per week. Plaintiff Marquez also alleges that Defendants paid him a flat rate of $15.00 per hour, regardless of how many hours he worked through a combination of check and cash. Specifically, Plaintiff Marquez alleges that Defendants paid him a flat amount of $650.00 per week with a check, and approximately $160.00 in cash.

On August 17, 2023, the parties attended a telephonic status conference in which a discovery schedule was adopted. [Order dated August 17, 2023.] The parties subsequently commenced discussions regarding potential early resolution of this matter. On or about October 5, 2023, the parties reached a settlement in principle. After negotiating and drafting the Agreement, the parties notified Your Honor that a settlement had been reached by letter motion dated January 9, 2024. [ECF Dkt. No. 28.]

As a result of good faith efforts between counsel, and prior to engaging in extensive and protracted litigation, the parties have settled this matter for $25,000.00 inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive $16,750.00 and Plaintiff's counsel will receive $8,250.00 in attorney's fees and costs.

**II.     ISSUES IN THE CASE**

Plaintiff's First and Third Causes of Action assert claims for unpaid overtime wages under the FLSA and NYLL. As noted above, Plaintiff alleges that he typically worked from approximately 8 a.m. to 8 p.m. or from 7 a.m. to 6:30 p.m., approximately five (5) to six (6) days per week, amounting to over sixty hours of work per week. Plaintiff alleges that because he was paid a flat rate regardless of the number of hours that he worked, he is owed overtime for the hours worked every week in excess of the first forty hours worked.

Plaintiff's Second Cause of Action asserts a claim for a failure to pay minimum wages under NYLL. Plaintiff asserts that accounting for the total number of hours he actually worked every week, the flat rate he was paid falls below the statutory minimum wage per hour during the relevant period.

Plaintiff's Fourth Cause of Action asserts a claim for failure to pay wages under NYLL. Plaintiff alleges that Defendants failed to timely pay him all owed wages including minimum wages, overtime wages, and "spread of hours" wages.

Plaintiff's Fifth Cause of Action asserts a claim for failure to pay "spread of hours" wages under NYLL. Plaintiff alleges that Defendants regularly required that he work more than 10 hours in a day but did not pay him for one additional hour at the statutory minimum wage rate.



Plaintiffs Sixth and Seventh Causes of Action assert claims for failure to provide pay stubs and wage notices in accordance with the NYLL. Specifically, Plaintiffs allege that Defendants failed to furnish "wage notices" containing all required information, in contravention of NYLL § 195(1)(a) and § 198(1)(b), and accurate "pay stubs" in contravention of NYLL §195(3), §198(1)(d).

### III. THE AGREEMENT IS FAIR AND REASONABLE

In Cheeks, the Second Circuit raised concerns with FLSA settlement agreements that contain (1) a battery of highly restrictive confidentiality provisions, (2) overbroad release provisions, and (3) provisions that set attorneys' fees at over 40%. Cheeks, 796 F.3d at 206. The Agreement, which will be filed publicly with the Court as Exhibit A to this letter motion, contains only a specific release relative to wage claims filed in the complaint. Additionally, the attorneys' fees and costs are limited to one-third of the settlement as also provided for in the retainer agreement between Plaintiff and Plaintiff's Counsel. Accordingly, we believe the Agreement is fair and reasonable in all respects under applicable case law and should be approved by the Court.

The Agreement calls for the stipulated dismissal of this action with prejudice should the Court approve of same. The Second Circuit holds that stipulated dismissals pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure settling FLSA claims with prejudice require the approval of the district court or the United States Department of Labor to take effect. Cheeks, 796 F.3d at 206. In considering whether to approve an FLSA settlement, the Court should examine the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Wolinsky v. Scholastic, Inc., 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). Here, the settlement meets these factors.

### A. The Plaintiff's Range of Possible Recovery

Plaintiff's estimated range of recovery for his claims should this suit move forward, and should he prevail, is approximately $16,000-$18,000. Through this negotiated settlement, Plaintiff will be able to recover wages and compensation allegedly owed within Plaintiff's calculated range of recovery if he were to prevail at trial, while avoiding further uncertainty, litigation, and delay.

### B. The Extent to Which the Settlement Will Enable The Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims and Defenses

This settlement enables the parties to avoid the anticipated burdens and expense of continuing litigation – including the very real possibility of trial – over these FLSA and NYLL claims. At trial, Plaintiff would have to establish that he did in fact work all the hours alleged, while Defendants would have to defend against such allegations. Additionally, Defendants could set forth various defenses that, if successful, could have prevented Plaintiff from obtaining any



recovery. Settlement enables both parties to avoid the risk of failing to prevail on their respective claims and defenses. This settlement represents a fair and reasonable resolution for the parties without having to continue to litigate this matter, including to trial.

### C. The Seriousness of The Litigation Risks Faced By The Parties

All parties face the risk of losing at trial, either in whole or in part. As with any jury trial, Defendants risk an adverse judgment against them and the fact-finder believing Plaintiff's allegations regarding additional amounts of wages owed to Plaintiff. On the other hand, Plaintiff may not win his case, and the fact-finder, instead, may determine that Defendants' records extinguish any claims for unpaid wages, i.e., Plaintiff's acknowledgement of monies paid in full satisfaction of his wage claims. Had the parties continued to litigate, they would have incurred the additional time and expense of discovery, multiple depositions, and briefing contested motions. Thereafter, the case would have proceeded to expert discovery, summary judgment, and trial, which likely would have taken an extended period of time and resulted in the expenditure of hundreds of thousands of dollars in additional legal fees. In light of these litigation risks, the decision to forgo the burden and expense of trial is reasonable.

### D. The Agreement Is The Product Of Arm's-Length Negotiations

This Settlement Agreement was reached after Plaintiff's initial disclosures, but before expending otherwise-inevitable resources on further discovery, depositions, and subsequent motion practice. Defendants communicated their settlement offer on or about September 22, 2023. A settlement in principle was reached on or about October 5, 2023. Subsequently, the parties' respective counsel engaged in negotiating and drafting the Agreement, which was finally submitted to Your Honor on January 9, 2024. The terms of the Agreement were reached through arm's-length negotiations between the Parties' respective counsel after engaging in investigations of the claims and defenses, and due diligence regarding the merits of Plaintiff's claims and the likelihood of either party's success at trial. "[C]onsidering the Settlement Agreement resulted from 'arm's length bargaining between experienced counsel,' there is 'no evidence to suggest fraud or collusion.'" Huggins v. Chestnut Holdings Inc., 2022 U.S. Dist. LEXIS 3156, at *5 (S.D.N.Y. Jan. 5, 2022) (quoting Strauss v. Little Fish Corp., 2020 U.S. Dist. LEXIS 126393 (S.D.N.Y. July 17, 2020).

### E. The Parties Are Represented By Experienced Counsel

Plaintiff is represented by LaDonna Lusher and Joel Goldenberg of Virginia & Ambinder, LLP ("V&A"), and Gennadiy Naydenskiy of Naydenskiy Law Group, P.C. ("NLG"). As further detailed in the Lusher Declaration, V&A and NLG exclusively practice in employment litigation with a concentration on wage claims under FLSA and associated New York state laws and have represented thousands of workers in numerous putative wage and hour class/collective actions in both federal and state courts. Ms. Lusher is a senior partner at V&A and has been practicing in the employment law field since 2005. Mr. Goldenberg is an associate at V&A and has been practicing in the employment law field since 2018. Mr. Naydenskiy is the founding partner of NLG has been practicing in the employment law field since 2013.



Defendants are represented by Claudia A. Costa and Frank Giambalvo of Gordon & Rees LLP ("G&R"). G&R, including Ms. Costa and Mr. Giambalvo, has extensive experience in representing defendant-employers in putative wage and hour class/collective actions. Ms. Costa has been practicing law since 1989, which practice has included regularly defending employers in wage and hour claims and all aspects of employment related matters. Mr. Giambalvo has been practicing since 2009, which practice has included regularly defending employers in wage and hour claims and all aspects of employment related matters.

Accordingly, the settlement reached in this matter was the result of arms-length bargaining between experienced counsel.

### F. The Settlement Agreement Does Not Contain Any Impermissible Terms Under Cheeks

Courts in this circuit have repeatedly found that non-publication clauses in FLSA cases similar to the one in the Settlement Agreement are permissible. Chowdhury v. Brioni America, Inc., No. 16-cv-344 (HBP), 2017 WL 5953171, *4 (S.D.N.Y. Nov. 29, 2017) (finding identical non-publication clause to be permissible and not in conflict with the FLSA's remedial purposes because the settlement agreement was on the public docket, permitted plaintiffs to decline commenting on the case further if the press should inquire and permitted plaintiffs to make truthful statements about the parties' experiences in litigating their claims and defenses); see also Lola v. Skadden, Arps, Meagher, Slate, & Flom LLP, No. 13 Civ 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (approving FLSA settlement that included confidentiality provisions preventing Plaintiffs from "contact[ing] the media or utiliz[ing] any social media regarding th[e] Settlement or its terms" and requiring Plaintiffs and their counsel, if contacted about the settlement, to respond " 'no comment' or be limited solely to words to the following effect: 'The matter has been resolved.' "); Chun Lan Guan v. Long Island Bus. Instute, Inc., No. 15-cv-02215(CBA)(VMS), 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving FLSA settlement with limited non-disclosure provision because "although these provisions do place some limits on Plaintiffs' ability to discuss the settlements, the limits are not absolute and do not restrict Plaintiffs' general ability to discuss the settlements); See Flores v. Studio Castelano Architect, P.C., 15-cv-9158 (TPG), 2017 WL 4417697 at *3 (S.D.N.Y. Oct. 2, 2017) (Griesa, D.J.) (finding non-disclosure provision permissible where it had "none of the hallmarks of the overly-broad provisions rejected by courts in this Circuit, such as an all-encompassing non-disparagement clause").

Moreover, while the agreement contains a non-disparagement agreement, it is carefully tailored to allow Plaintiff to make truthful statements about his experience litigating his case. Similar provisions are regularly approved within this Circuit. See Torres v. McGowan, No. 18 Civ. 6099 (RML), No. 18 Civ. 6099, 2020 WL 5369056, at *3 (E.D.N.Y. Sep. 8, 2020) (citing Lazaro-Garcia v. Sengupta Food Services, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015)).



In addition, the Settlement Agreement contains a clause prohibiting future employment that is identical to clauses previously approved by courts within this Circuit. See Vargas Ortiz v. Three Star on First, No. 19 Civ. 928 (OTW), 2019 WL 4013981, at *3 (S.D.N.Y. Aug. 26, 2019) (finding that an agreement that had a no future employment clause "lack[ed] certain objectionable provisions that court have found fatal in other proposed FLSA settlement").

Finally, the release of claims is limited to wage and hour claims under the NYLL and FLSA only, which has been universally approved by courts in this Circuit under Cheeks. Cionca v. Interactive Realty, LLC, No. 15-CV-5123 (BCM), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (approving FLSA settlement so long as release limited to claims at issue in the action).

## IV.   ATTORNEY'S FEES ARE REASONABLE

The FLSA and NYLL are fee-shifting statutes that entitle the prevailing party to recover its reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("In any action . . . in which the employee prevails, the court *shall* allow such employee reasonable attorney's fees . . .") (emphasis added). "'[A] plaintiff is considered to be a prevailing party for the purposes of the FLSA "if [he or she] succeeds on any significant issue in litigation which achieves some of the benefit [the party] sought in bringing [the] suit.'" Dillatoro v. D'Onofrio, 2022 U.S. Dist. LEXIS 95121, *9 (E.D.N.Y. May 25, 2022) (quoting Andrews v. City of New York, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015).

This includes a favorable settlement. "'Where, as here, a plaintiff obtains a favorable settlement in an FLSA action, that plaintiff constitutes a prevailing party.'" Dillatoro, at *9 (citations omitted). See also Kahill v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) ("The fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [plaintiffs'] claim to fees"). Here, the settlement is favorable as it achieves a robust recovery for Plaintiffs, including liquidated damages.

Plaintiff's counsel seeks approval of $7,522.41 in fees and $727.59 in costs expended on behalf of Plaintiff, for a total of $8,250.00. In considering the reasonableness of a fee award in FLSA cases, courts consider the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res. Inc., 209 F.3d 43, 53-54 (2d Cir. 2000).

Here, Plaintiff's counsel maintained contemporaneous time records reflecting the tasks performed and the time it took to perform those tasks. In this matter, Plaintiff's counsel has devoted 49.73 hours in representing Plaintiff for a total of $11,233.67 in fees. The work conducted by Plaintiff's counsel in this action includes, but is not limited to: (1) due diligence on Plaintiff's claims and Defendants' potential defenses; (2) drafting pleadings; (3) drafting correspondence with the Court; (4) drafting correspondence to Defendants; (5) preparing for and attending the Initial Conference; (5) drafting Rule 26 disclosures; (6) drafting discovery demands; (7) negotiating settlement and terms of the settlement agreement; (8) revising the instant letter motion for approval and dismissal; and (9) meetings and communications with Plaintiff.



Plaintiff's counsel's fees are reasonable. "The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2007). Indeed, courts should "attempt to approximate the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Kalloo v. Unlimited Mech. Co. of NY, 977 F. Supp. 2d 209, 212 (E.D.N.Y. 2013).

The rates billed by V&A are reasonable and consistent with rates previously approved. Cohan v. Columbia Sussex Mgmt., LLC, 2018 U.S. Dist. LEXIS 179192 (E.D.N.Y. Sept. 28, 2018) (Tomlinson, J.) (approving rates of $525.00 per hour for V&A senior partner, $395.00 per hour for V&A senior associate, $250.00 per hour for V&A junior associate, and $100.00 to $125.00 per hour for V&A paralegals, and noting that V&A provided "quality representation"); Griffin v. Aldi, Inc. (5:16-cv-354) (N.D.N.Y. November 15, 2018) (Kahn, J.) (approving rates of $525.00 per hour for V&A senior partner, $450.00 per hour for V&A partner, $425.00 per hour for V&A senior associates, $325.00 per hour for V&A junior associates, and $125.00 for V&A paralegals); Kalloo v. Unlimited Mech. Co. of NY, 977 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) (finding that V&A's "familiarity with the applicable law and the specific facts of this case assured that the trial moved swiftly, saving the time of the court, as well as, undoubtedly, that of defense counsel."); Drakopoulos v. Ardian Corp., 15-cv-4717-BMC, Docket No. 28 (E.D.N.Y.) (finding that "[t]he attorneys' fees and costs are entirely reasonable and efficient….").

The lodestar cross-check, which compares the requested fee to the time and labor expended by counsel, weighs in favor of approving the requested fee in this matter. Here, Plaintiff's counsel's lodestar is $ $11,233.67. Accordingly, the agreed upon fee of $8,250.00 is less than the lodestar. Thus, the fee is entirely reasonable considering courts within the Second Circuit have awarded fees that are in excess of a counsel's lodestar. See e.g., In re Hi–Crush Partners L.P. Sec. Litig., 2014 WL 7323417, at *18 (S.D.N.Y. 2014) (multiplier of 1.41); In re Visa Check/Master money Antitrust Litig., 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003) (multiplier of 3.5); In re Citigroup Inc. Sec. Litig., 965 F.Supp.2d. 369, 401 (S.D.N.Y. 2013) (multiplier of 2.8).

Plaintiff's counsel also spent $ 727.59 in out-of-pocket expenses. [An itemized list of costs is annexed to the Lusher Decl. as Exhibit B.] "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted). Here, Plaintiff's counsel incurred actual expenses of $726.58 for costs such as court fees and service fees. These expenses were incidental and necessary to the representation of Plaintiff.

The retainer agreement between Plaintiff and Plaintiff's counsel provides that Plaintiff's counsel will be entitled to fees in the amount of 33% of any judgment or settlement proceeds and that costs advanced by Plaintiff's counsel related to the prosecution of the action shall be reimbursed to V&A.



Public policy also weighs in favor of approving the requested attorneys' fees and costs. The purpose of shifting attorneys' fees to a defendant-employer is to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected." Sand v. Greenberg, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. 2010).

In this case, the attorney's fees and costs of $8,250.00 are reasonable considering the work performed and the favorable result obtained for Plaintiff. Therefore, the parties respectfully request the Agreement, including attorney's fees and costs be approved.

V.   **CONCLUSION**

Accordingly, the parties jointly request that the Court approve of the Settlement Agreement as it pertains to Plaintiff's FLSA claims, "so order" the proposed stipulation of dismissal, and have it entered on the docket by the Clerk of the Court.

Thank you for your time and consideration.

Respectfully submitted,

/s/LaDonna M. Lusher, Esq.
LaDonna M. Lusher, Esq.

cc:   Via ECF Filing
      All counsel of record